Our last case for today is Boyd v. U.S. Appeal Number 23-2104. Is your name pronounced Georgievich? Georgievich. Georgievich. Okay. Okay, Ms. Georgievich, please proceed when you're ready. Thank you, Your Honor. Good morning and may it please the Court. My name is Nada Georgievich and I represent Plaintiffs Lester Bonner and Princess Williams, two of thousands of hardworking farmers who have been devastated by the government reneging on its obligation to pay off their FSA loans. The trial court's decision here should be reversed for two reasons. Under the plain language of Section 1005 of ARPA, the government was legally obligated to pay off my client's FSA loans. The second reason is recognizing that obligation. The court or the government, rather, entered into binding agreements with my clients and all of the other socially disadvantaged farmers who checked Option 1, I accept, when presented with the terms and conditions of the government's loan repayment offer. Now, Maine Community Health Options v. U.S. is dispositive here. There, the Supreme Court held that Congress created an enforceable legal obligation on the part of the government through Congress's choice of language in Section 1342 of the Affordable Care Act. Specifically, that section stated that the Secretary shall pay the eligible insurance plans their certain stated amounts. Congress used that same language in Section 1005 of ARPA here, stating that the Secretary shall provide a payment in an amount up to 120 percent of the outstanding FSA loans held by the socially disadvantaged farmers. There's no discretion there. They absolutely must do it. It is a binding obligation. And as the Supreme Court pointed out in Maine Community Health Options, the first sign that the statute imposed an obligation is its mandatory language. Are you arguing that your clients have a basis for a claim other than that there's a contract with the government? Is that your first argument? I didn't fully understand. There's a contractual basis and now there's something else? So that mandatory language both supports the contract and supports an argument that there is an independent legal obligation to pay off the loans. Our argument is that the government did that here through the form of a contract, which they've since breached. But that statute itself creates a legal binding obligation. Was the claim below anything other than breach of contract? The claim below is breach of contract. However, review here is... You're limited to the argument you raised below on appeal, right? This court has the discretion to consider the argument, now if it chooses to, or to remand the case in order to have the court below consider it if it was not considered... Actually, we don't have discretion to consider arguments that weren't made to the trial court. So we cited Board of Supervisors of Issaquahna County versus Mississippi versus the United States, a decision by this court for the proposition that it could be remanded for the court below to consider if this court didn't consider it. But also, as the U.S. Supreme Court found in Singleton v. Wolf, this court has discretion in general to address any argument that it believes has been developed here. And the violation of Section 1005 was included in our pleadings and was addressed. It is correct that it was addressed specifically from the angle of contract, but the obligation remains. So I really want to make sure I understand. Your argument today is even if we were to agree with the trial court that there is not a contract here between your clients and the United States government, you still have a claim that you would like to press and that you think you presented to the trial court? We did present that Section 1005 had been violated. And again, we did that in the context of saying the government chose to effectuate Section 1005 through a contractual offer, but we did present the argument that Section 1005 had been violated. And as the Supreme Court held, again, in Maine health options, that mandatory language in the statute creates a binding obligation on the government to make. Is one of the things you're asking us to decide, Court of Appeals, even if you agree there's not a contract here, my clients still have a claim. Is that part of what you're asking us to decide? If I agree? It is part of what we're arguing. And again, to the extent the court does not feel it has the authority to make that decision, the court does have the authority nonetheless to remand the case to allow us to amend our complaint to add that argument directly if the court feels that it has not been presented. Can you tell me also where that argument is made in your opening brief? Because I'm looking, for example, on page three of your brief and it says, you know, a statement of issues, but that the Court of Federal Claims erred as a matter of law in finding that plaintiffs failed to allege the necessary elements of contract formation and thereby dismissing their complaint. So it doesn't seem to raise other issues. It raises the issue of contract formation. And again, it raises the issue of section 1005 as Congress's mandate that the payments be made and authorization for the Secretary of Agriculture to effectuate that mandate in whatever manner he felt was appropriate. The problem is I don't see it in your brief, so is there a particular page that you would want to cite to me? I want to make sure I fully consider your argument, and so if it's your position that it's somewhere in this blue brief, I want to know where it is. Stated in the exact way I'm presenting it today, that is not, again, in our brief. It is melded together. Which option under the FSA 2601 form should we focus on? Focus me on which one. It's option one, right? Yes. Our clients in the putative class are all farmers who checked option one. So you're citing the Maine community case, which I think says there's a specific government promise to make payment. And my question is, in option one, could you point me to the language where that promise is articulated? I can point you. Let me pull up the form. If you take a look, so there's three copies of FSA 2601, part of the appendix. One is the general one, and then there was one each for our clients. So I'm just going to focus on one of them. Language is essentially similar. So if you take a look at appendix 59. I have the language in front of me. You can tell me what it is. So you have to look both at option one and at the language above it, which is what leads to the three options. And what it states there is that the FSA records show that you had a direct loan and that you are eligible for payment. And that in the next line there, all of your eligible direct loan debt will be paid in full. So there's an acknowledgment of the obligation. The will be paid in full is what you want us to focus on regarding a specific promise by the government to pay that's contractually binding? Both the language in the statute, which created the obligation, and then yes, the language of FSA 2601. Will be paid in full. Will be paid in full. There's more, but that's the first option. It mentions that concept of being paid in full several times. There's also language on appendix 60, specifically acknowledging that if payments are still due on the borrower's loan, they might receive an automated payment reminder, but that they understand that they can disregard the reminder letter for any loans that are listed on the ARPA calculation worksheet again. How does that obligate the government? It shows that the government was so clear that if you accepted this offer, it was going to pay your loan off in full, but it was telling you even if our automated system is still sending you notices, you can disregard that because you don't actually owe anything. And then again, both the notices in the Federal Register that describe Section 1005 and FSA 2601 and internal communications the government made to its own employees also describe this form as an offer letter that needs to be either accepted by the borrower, declined by the borrower, or if they have questions or want to challenge the calculation amount, they can do that before then having to make a decision as to accept or decline. And to the extent someone did challenge that calculation, employees were also instructed that if it was determined that the amount was incorrect, a new FSA 2601 had to be issued with that corrected amount listed, and then that became the actual offer that was presented to the buyer that they then had the right to accept or decline. Congress placed no limits on how the Secretary of Agriculture fulfilled the mandate in Section 1005, and as we argue here, he chose to send contractual offers to eligible socially disadvantaged farmers. Do you disagree that there are other portions of ARPA that expressly delegate contractual authority, the authority for the Secretary to enter into contracts, and that's missing from Section 1005? I do agree that there are other sections of ARPA that specifically reference contracting. I disagree that the obvious conclusion from that is that that authority is missing here. Our argument is that Section 1005, Congress put the mandate in and gave the Secretary essentially complete discretion as to how to effectuate that mandate. They didn't say it must be done like A, B, or C. And in this case, he chose to do it through contracts, and that also makes sense. The FSA loan program in general involves contracts. All of the loans to begin with are contracts. And a program to repay those loans and to essentially extinguish that debt, it's perfectly reasonable that the same entity that had the authority to enter into those contracts would need contractual authority or need to have the authority to enter into contracts to extinguish that same debt. So here, each eligible socially disadvantaged farmer was sent a Form FSA-2601 specific to them, addressed to their name, specifically listed the eligible loans that they had, and then, again, asked them to choose. I accept, I decline, or I need to talk to you further first. My clients in the putative class all accepted that offer. I have one other question for you. At page three of the government's brief, they say that Congress has the authority to adjust the existence and scope of financial assistance programs as it sets public policy for our nation. They don't cite anything there, but do you agree with that in principle? And if you don't, could you cite me to something? They may have the authority to do that going forward. Certainly, if they want to change something, they have the authority to do that. They do not, however, have the authority to eliminate an obligation that, or a liability on their part that has already been incurred. And for that, I would point you to section... But isn't that only if the liability is a contractual one, or are you saying the government is limited, that Congress can't repeal a program that was going to provide assistance, even if they change their minds on policy, and they haven't entered into a contract? I don't know if the question is clear. If there is, this goes back to, if there is no contractual obligation, what, if anything else, limits Congress's authority to say, sorry, we've changed our mind? We're not arguing that Congress cannot change its mind going forward, but Congress cannot eliminate liabilities that have already been incurred. And what I would point to you for that is 1 U.S.C. section 109, which states that the repeal of the statute does not eliminate any obligations or liabilities that are already incurred under that statute, unless the repealing statute specifically says otherwise, and that the statute will be treated as continuing in effect for purposes of an enforcement action. Here, the language in the Inflation Reduction Act of 2022 that repealed section 1005 simply said this section is repealed. It didn't say anything about extinguishing any existing rights. And our argument here is that both based on the mandatory language in the statute and the fact that our clients returned form 2601, checked, I accept, but the government's acknowledged that the only thing left for them to do at that point is make the payment, that those payment obligations stand regardless of any steps taken later. Great. Thank you, counsel. Let's hear from the government. May it please the court. This appeal is about contract formation and nothing else. For the first time at oral argument on appeal, there is a request for this court to vacate the judgment with instructions to allow leave to amend to assert a new claim for violation of the statute. That's got to be triple waiver if I've ever seen it, because that claim was not asserted in the trial court. There was no request for leave to amend in the trial court. That assertion was not made in the blue brief. It was not even made in the gray brief. The only reference to leave to amend in the gray had to do with a new consideration theory that they had come up with related to taxes. And that was even made only in a footnote, footnote six on page 15 of the gray. That issue is not before the court, but I will just share that it is highly doubtful that such a claim could survive a motion to dismiss because there are numerous problems with it, both of jurisdictional and constitutional dimensions, which I can't even go into on the fly here. Well, I appreciate your mentioning this. I'm sure it's difficult seeing as it's been raised for the first time today. But I would just say that issue is not before the court. So I'd like to pick up my argument really with what this appeal is about, which is contract formation. And I'd like to start with the notice from USDA's Farm Service Agency, the FSA 2601, which really lies at the heart of the plaintiff's claims for breach of contract. The 2601 form itself states that it is an informational notice, one that will be used by the agency to, quote, process the customer's request for payment according to ARPA. Now, ARPA Section 1005 created this financial assistance program and established fixed eligibility criteria for certain types of farmers and set a formula for computing the payments. But the program barely got off the ground because several district courts enjoined it as unconstitutional on equal protection grounds, and then Congress saw fit to repeal it and do other things for farmers in this country. Is it really fair to characterize the form as merely an informational notice? I think it's undisputed that it's generated by the, I think the FSA, but by the Department of Agriculture. It's sent proactively by the government to the SDF, to the farmer. It's got specific information about the farmer. It's basically telling the farmer, you are eligible for this. It's not just a flyer randomly posted, you know, on the street to provide information widely to the entire community, is it? Well, there is farmer-specific information being provided in the informational notice, but that's not my characterization, Your Honor. On appendix page 43, which is one of the three versions of the 2601, they're substantially identical, USDA called their own form an informational notice. It's in the third paragraph of the form. It says, this informational notice. And then it talks about the consequences of it being an informational notice and that no one should care about it for bankruptcy purposes. But it's still, they called it an informational notice. That's not my characterization. And in this case, the plaintiffs are the customers who returned that informational notice, the 2601 form, with their request for payment under this program that unfortunately could not be fulfilled. But under this court's decision. Can I ask you? Of course. Same point. I mean, it says, I accept your payment. So why is that, you know, a request if it says I accept? Or information. Accept isn't really consistent with informational, is it? I'm sorry? Accept doesn't seem to be consistent with informational. Agree or disagree? Your Honor, I disagree because the information that's being provided is the agency's initial computation of what this farmer may be entitled to request. The form itself describes the recipient as a customer, not a contractor. It says that this form will be used to process the customer's request for payment, not acceptance of a contractual offer. So I do respectfully disagree with the preference. The issue is that even though it says I accept, you have other language that you point us to that you think undermines that suggestion from the word accept that it's a contract. Yes, indeed. And under this court's decision. And do you have other language you want to point us to other than the informational notice? And I think you just repeated something else. Is there anything else you would identify for us? Well, for example, on page 45, the information will be used. I'm making an ellipsis. For a number of reasons, including in order to process the customer's request for payment according to CARPA. And later, a failure to furnish the requested information may result in a determination that FSA cannot process the customer's request for payment. What page are you on, please? Appendix 45. Is it the tiny words in the box? The boxes at the bottom? Yes. Okay. Yes. And I apologize that they're small. Okay. But that is what they say. That's what they call the fine print. The devil is in the details. But this court's precedents, like American Bankers and DNN Bank have established, is that legislative programs are just policies to be pursued until Congress declares otherwise. And those programs don't create private contractual rights unless there is a clear indication, a clear indication of government intent to contract. What case from our court do you think is the best for the proposition you just said? American Bankers and DNN Bank, for sure, Your Honor. And those propositions have been repeatedly cited in at least half a dozen cases since then. But you can't, under those cases, you can't just have a cloud of evidence. That's what DNN Bank says. You can't have a cloud of evidence that's merely consistent with possible contract formation. It has to be clear. It has to be unambiguous, offer an acceptance, not merely possibly consistent with it. And in the statute itself, which is the starting point for the analysis, ARPA Section 1005 created this financial assistance program, but there's no clear indication in the statute that the government intended to negotiate contracts in exchange for handing out these financial assistance payments. ARPA was a huge piece of legislation, and as Judge Stark's question before alluded to, it did contain numerous provisions for the use of contracts in other programs. But there's nothing in Section 1005 that gives any indication, much less a clear indication, that the government intended to contract in exchange for payments in the 1005 program. And likewise, there's no clear indication in the 2601 form itself that the government intended to make a contract. To the contrary, as we were discussing, the 2601 form itself states it's an informational notice, not a contract. It says the recipients of that notice are customers, not contractors. And it says that the customers are making a request for payment under ARPA, not accepting a contractual offer. Can I ask you about consideration? You point out the trial court said there's no consideration regardless of whether you check Box 1, 2, or 3. But it would seem to me the analysis has to be different. It may be that the end result is there's no consideration for 1, 2, and 3, but at least when you check 1, it seems like you're waiving certain rights to at least challenge the calculation, maybe other appellate rights. Would you agree that the analysis as to whether there's consideration for checking Box 1 is different from if you check Box 2 or 3? No, Your Honor, because there's no consideration anywhere in this document. Let's talk about the three consideration theories that have been. I'm most concerned with the waiver of appellate rights, so if you start with that, please. Happy to, Your Honor. I'll focus on that. There's nothing in the 2601 form itself that provides for any waiver. There's no release language. There's no waiver language anywhere in the form. And the plaintiffs don't allege that there was a dispute about the calculation, so they don't really allege that there was something to waive anyway. That's not consideration. And as we discuss in the briefs, the remaining consideration theories are without merit as well. Let me ask you something else then. I'm sure you're aware there's allegations of detrimental reliance here by the plaintiff class, and specifically the named members, the named plaintiffs, and we hear more about that in the brief. Does the government have anything to say about that? We do address that in our principal brief, Your Honor, in the red. The detrimental reliance theory is not cognizable in the court of federal claims because historically that is considered to be an implied-in-law contract as opposed to an implied-in-fact contract. And the court of federal claims only has jurisdiction to entertain claims for breach of an implied-in-fact contract. And there is a concession, I believe, in the reply in the gray, which concedes that they're not trying to assert an implied-in-law contract. So while I can empathize with the disappointed expectations and the hope for payments that they thought were going to materialize, but district courts enjoined the government from making those payments that it was ready, willing, and able to make at the time, and Congress ultimately decided to repeal the program. So that is not consideration reliance. While understandable, we can empathize with it, but it's not legally significant or sufficient. In short, there are four elements of contract formation, and the plaintiffs have failed to allege well-pleaded facts that would establish any of them. A failure on any element is fatal, and their breach of contract claims have four fatal pleading defects. The court should affirm. Thank you. I will restore your rebuttal time. So I want to make a couple of quick points here. The first is that the government suggested to this court that where and how the term informational notice is used, or where and how there are quotes to the fact that this information will be used, or that the borrowers here are customers, it's irrelevant where it's not, but it is relevant here. The term informational notice is found in only one spot on the FSA 2601, and it's in a bolded section specifically aimed at borrowers that are either in bankruptcy proceedings or have had their debts discharged, and the government is informing them that this letter is not an attempt to collect a debt from them. That's the informational portion of that. The rest of the language in here in terms about all of your eligible debt will be paid in full, that I accept the ARPA payment, my payment will be distributed, goes to a contract. The language, as counsel pointed out, is hard for anyone to find. The fine print, I'm going to refer to Appendix 61, is part of the language that had to be included here under the Privacy Act of 1974. It's simply to inform the borrowers the same way the government would inform anyone else that received a form from them, that some of the information here is considered private and it's voluntary if you choose to give it or not. It has, again, nothing to do with the terms of the actual offer that was being made and the acceptance of that offer by my clients. So you can't look to fine print about that Privacy Act that's so small that honestly I have trouble reading it even with my reading glasses. I have to take them off and stare at this paper to somehow trump the entirety of this contract otherwise. The government talked about you need an unambiguous offer and acceptance. You can't get any clearer than what the government itself called an offer letter that says you're eligible, we're going to pay your debt in full, and my client said I accept your calculation and your debt payment. The government talked about lack of the word waiver in here, but it's very clear that only two groups of people retain the right to appeal, those that chose option two to talk to the government and still disagreed with the calculation afterwards. And then also the form specifically mentions loans with multiple borrowers and if there are any borrowers that haven't signed and returned the form within 60 days, it expressly states that those borrowers and only the ones that have not signed are to be informed of their appeal rights. And then if they don't file an appeal within 30 days, the form goes back. It says nothing about the farmers that did sign, I accept, even in those multi-borrower loans having any right to appeal. And the final point as to detrimental reliance, we're not arguing and implied in law contract. However, the expenditures that my clients made go to both showing intent and also to showing that they were contributing to the agricultural sector just as ARPA was intended to have them do. And we have some additional language in the briefing as to why that is valid consideration. Thank you. Thank you, counsel. We thank both counsel for their argument today. The case is submitted. And that's the end of our oral argument scheduled for today. Thank you.